UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE 1,

                    Plaintiff,

          vs.

EASTERN MUTUAL INSURANCE COMPANY and
NAUTILUS INSURANCE COMPANY,

                    Defendants.

---

**COMPLAINT**

Case No.  7:26-cv-3080

---

The Plaintiff, JANE DOE 1 ("Plaintiff" or "Jane Doe 1"), by and through her attorneys, McAllister Olivarius and Hurwitz Fine P.C., as and for her Complaint against EASTERN MUTUAL INSURANCE COMPANY ("Eastern Mutual") and NAUTILUS INSURANCE COMPANY ("Nautilus") (collectively, the "Insurers" or the "Defendants") seeking recovery of substantial damages caused by Palpung Thubten Choling, f/k/a Kagyu Thubten Choling ("PTC" or the "Insured"), alleges, upon information and belief, as follows:

### NATURE OF THE ACTION

1.      Jane Doe 1 is a judgment creditor of Palpung Thubten Choling, f/k/a Kagyu Thubten Choling ("PTC"), pursuant to a judgment in Case No. 7:23-cv-10117 (S.D.N.Y.) in the amount of $28,690,541.83, as reflected in the sworn Affidavit of Confession of Judgment and attached Assessment of Damages (the "Judgment"), a copy of which is provided herewith as *Exhibit A*.

2.      Plaintiff brings this direct action against Defendants, and this action as an assignee of the rights of PTC against the Defendants under PTC's policies of insurance described herein.

1

**PARTIES**

3.     Plaintiff is a resident of the State of Vermont.  Plaintiff is the same Jane Doe 1 who, pursuant to an Order of the Hon. Nelson R. Roman, U.S.D.J., dated January 5, 2024, in a matter in this Court entitled JANE DOE 1, et al v. PALPUNG THUBTEN CHÖLING, et al, Case No. 7:23-cv-10117 NSR, was permitted to proceed anonymously (Doc. 16). That action is referred herein as the "Underlying Action."

4.      At all times hereinafter mentioned, Defendant, Eastern Mutual, was and is a domestic insurance company organized and existing under the laws of the State of New York.

5.     At all times hereinafter mentioned, Defendant, Nautilus, was and is a foreign insurance company organized and existing under the laws of Arizona and authorized to issue insurance policies in the State of New York.

**JURISDICTION AND VENUE**

6.     This Court has personal jurisdiction over the Defendants because this action is a direct action under policies of insurance issued in the State of New York as they relate to incidents that occurred in the State of New York, County of Dutchess.

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332. Jane Doe is a citizen of Vermont. Eastern Mutual is a citizen of New York, and Nautilus is a citizen of Arizona. The amount in controversy exceeds $75,000.

8.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because the acts and/or omissions giving rise to Plaintiff's claims occurred in the State of New York, County of Dutchess, which is in this District.

**FACTUAL ALLEGATIONS**

9.      On November 17, 2023, the Plaintiff, and two others, Jane Doe 2 and Jane Doe 3 (collectively the "Underlying Plaintiffs"), commenced the Underlying Action in this District seeking damages for sexual abuse that all three women had suffered at the hands of PTC director, Norhla Rinpoche ("Norhla"), and for common law negligence against PTC for its failure to keep its property safe and protect the Underlying Plaintiffs against foreseeable harm, among other claims.

10.     In the Underlying Action, Jane Doe 1, Plaintiff herein, alleged that she sustained multiple occurrences of personal injury from June 2013 to June 2014, multiple occurrences of personal injury from June 2014 to June 2015, multiple occurrences of personal injury from June 2015 to June 2016, and multiple occurrences of personal injury from June 2016 to June 2017, all while residing at the monastery owned and operated by PTC. Further, Plaintiff alleged that these injuries arose from PTC's negligence in failing to prevent repeated sexual abuse.

11.     On January 6, 2026, an Affidavit of Confession of Judgment was executed by James Streit, Trustee of PTC, in favor of the Plaintiff, Jane Doe 1, for the negligence and negligent retention and supervision claims in the amount of $28,690,541.83 after a hearing and determination of the amount of damages by an impartial hearing officer.  That judgment is currently unfiled with this Court.

12.     Plaintiff now brings the present action against Eastern Mutual and Nautilus pursuant to New York Insurance Law § 3420(a)(2) under their respective policies issued to PTC, and pursuant to the assignment by PTC of all of PTC's rights, claims, and causes of action against the Insurers for indemnification under said policies. Section § 3420(a)(2) of the New York Insurance Law permits a judgment creditor who has obtained a judgment against an insured to

maintain a direct action against its insurer under the terms of the policy for the amount of the judgment not exceeding the amount of the applicable limit of coverage under such policy.

**The Eastern Mutual Policies**

13.    Eastern Mutual issued a Special Multi-Peril Policy to the named insured, PTC, bearing policy number 10-2013-623, for the policy period from June 1, 2013, to June 1, 2014 (the "Eastern Mutual Policy"). The Eastern Mutual Policy provides coverage limits of $1,000,000 per occurrence and $2,000,000 in the aggregate.

14.    The Eastern Mutual Policy was renewed annually for the policy periods from June 1, 2014, to June 1, 2015, from June 1, 2015, to June 1, 2016, and from June 1, 2016, to June 1, 2017.

15.    The Eastern Mutual Policy and the renewal policies for the periods from June 1, 2013, to June 1, 2017, will be collectively referred to as the "Eastern Mutual Policies."

16.    The Eastern Mutual Policies contain a **GENERAL LIABILITY COVERAGE FORM**, Form LS-5 9/02, which includes the Insuring Agreement and provides in pertinent part:

> **B. PRINCIPAL COVERAGES**
> **COVERAGE L-*BODILY INJURY* AND/OR *PROPERTY DAMAGE***
> *We* provide *bodily injury* and/or *property damage* coverage if a limit of liability is shown on the Declarations page, the Supplemental Declarations page or on any endorsement attached to this policy. The *bodily injury* and/or *property damage* must be caused by an occurrence. The *occurrence* must take place in the *coverage territory* during the policy period.
>
> **WHAT *WE* PAY FOR-COVERAGE L**
> *We* pay, up to the limit of liability, all sums when the *insured* is legally obligated to pay damages because of *bodily injury* and/or *property damage* caused by an *occurrence* to which this coverage applies. *We* will not accept any obligations or liability to pay sums or to perform acts or services unless the coverage is specifically provided for in the Supplementary Payments. *We* shall have the right and duty to defend the insured against any

*suit* seeking covered damages, even if any of the allegations of the *suit* are groundless, false or fraudulent, provided the *suit* originates from *bodily injury* and/or *property damage* not otherwise excluded. *We* may make any investigation and settle any claim or *suit* that *we* decide is appropriate. *We* are not obligated to provide a defense after we have paid, either by judgment or settlement, an amount equal to *our* limit of liability. Coverage L applies to:

1. *Bodily injury* including covered damages claimed by any person or organization for care, loss of services or death resulting at any time from the *bodily injury*.

2. *Property damage* including loss of use of tangible property that is not physically injured and which shall be deemed to occur at the time of the occurrence that caused it.

\*\*\*

17.    The **GENERAL LIABILITY COVERAGE FORM,** Form LS-5 9/02, also contains the following relevant definitions:

A. **DEFINITIONS** – these definitions apply to the policy:

\*\*\*

3. **Bodily Injury** means **bodily injury**, bodily sickness and/or bodily disease sustained by any person occurring during the policy period, including death resulting from the **bodily injury**, bodily sickness and/or bodily disease.

\*\*\*

16. **Occurrence** means an accident including continuous or repeated exposure to substantially similar conditions.

\*\*\*

18.    Upon information and belief, on or before February 7, 2024, Eastern Mutual was asked by PTC to defend and indemnify when PTC was sued in the Underlying Action.

19.    On or about February 7, 2024, Eastern Mutual issued a disclaimer of coverage to PTC citing to exclusions in the Eastern Mutual Policies including exclusions for criminal activity,

5

for damages occurring outside of the policy period, for punitive damages and for an exclusion for assault and battery. *See Exhibit B*.

20.     New York Insurance Law § 3420(d)(2) provides:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

21.     Neither the Plaintiff, who qualifies as an "injured person" under New York Insurance Law § 3420(d)(2), nor her counsel were provided with the written notice of disclaimer or denial of coverage as soon as reasonably possible.

22.     Eastern Mutual did not provide written notice of its disclaimer of coverage to the Plaintiff or her counsel by any means from the time the February 7, 2024, disclaimer was issued to PTC through the end of 2024

23.     On December 20, 2024, by and through her attorney, the Plaintiff notified Eastern Mutual of its failure to provide written notice of its disclaimer as soon as reasonably possible in violation of Insurance Law § 3420(d)(2).

24.     Then, in April 2025, through her attorney, the Plaintiff sent Eastern Mutual additional materials regarding the Underlying Action and asked Eastern Mutual to reconsider its coverage denial in light of the materials provided.

25.     On June 6, 2025, Eastern Mutual reiterated its disclaimer of coverage and has refused to defend or indemnify its insured.

26.     On January 13, 2026, counsel for the Plaintiff notified Eastern Mutual of the Affidavit of Confession of Judgment issued by PTC to Plaintiff, and requested payment in the

aggregate amount of $8,000,000, which is available under the Eastern Mutual Policies for the four (4) policy periods at issue.

27.     On January 30, 2026, counsel for Eastern Mutual reiterated to Plaintiff's counsel the December 20, 2024, and June 6, 2025, disclaimers of coverage and refused to defend and indemnify PTC in the Underlying Action.

**The Nautilus Insurance Policy**

28.     Nautilus issued an excess liability policy to the named insured, PTC, bearing policy number AN026417, and effective for the policy period from March 10, 2016, to March 10, 2017 (the "Nautilus Policy"). The Nautilus Policy provides an aggregate coverage limit in the amount of $5,000,000.

29.     The Nautilus Policy contains the **EXCESS LIABILITY POLICY (NE 00 31 04 10)** endorsement which provides in pertinent part:

**EXCESS LIABILITY POLICY**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **Section IV Definitions** and relevant references in the text of this policy.

**SECTION I - EXCESS LIABILITY COVERAGE**

**1. Insuring Agreement**

**a.** We will pay on behalf of the "insured" the "ultimate net loss" is excess of the "underlying insurance limit" because of injury or damage caused by a "loss event" to which this insurance applies provided:

7

**(1)** The aggregate amount of all limits of "Underlying Insurance", as shown in the Schedule of "Underlying Insurance", has been exhausted by payment of judgments, settlements, costs or expenses; and

**(2)** The "loss event" occurs or is committed during the policy period.

However, this insurance does not apply to:

**(a)** Any sums for which the "insured" is legally liable, costs or expenses arising out of, caused by or contributed to by any injury or damage, whether such injury or damage is known or unknown:

**i.** Which first occurred prior to the inception date of this policy; or

**ii.** Which are, or are alleged to be, in the process of occurring or being committed as of the inception date of the policy even if the injury or damage continues to occur or continues to be committed during this policy period.

**(b)** Any sums for which the "insured" is legally liable, costs or expenses arising out of or related to any injury or damage, whether known or unknown, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy.

**b.** Except to the extent any terms, definitions, limits of insurance, conditions or exclusions of the "controlling underlying insurance" are different from any terms, definitions, limits of insurance, conditions or exclusions of this policy, this policy will provide the same coverage for "ultimate net loss" as provided by the "controlling underlying insurance". If any terms, definitions, limits of insurance, conditions or exclusions of this policy are more restrictive than those of the "controlling underlying insurance", then this policy's terms, definitions, limits of insurance, conditions or exclusions will apply. However, under no circumstance will this policy provide broader coverage than that provided by the "underlying insurance".

    **c.**  The amount we will pay for the "ultimate net loss" is limited as described in **Section II –Limits of Insurance.**

30.    The **EXCESS LIABILITY POLICY (NE 00 31 04 10)** endorsement also contains the following relevant definitions:

    **1.**  "Controlling underlying insurance" means the policy or policies that are indicated as such on the Schedule Of "Underlying Insurance".

***

    **5.**  "Loss Event" means the happening, situation or circumstance that initiates the application of the "underlying insurance" as designated in the Schedule of "Underlying Insurance".

***

    **9.**  "Underlying insurance" means the coverage(s) afforded under insurance policies, for the limits shown, as designated in the Schedule of "Underlying Insurance", and any renewals or replacements of those policies. Policies endorsements or coverages written on a claims made policy form will not be considered "underlying insurance."

***

31.    On January 9, 2024, Nautilus issued a disclaimer of coverage to PTC for the Underlying Action stating no specific grounds for its disclaimer. ***See Exhibit C***.

32.    On January 9, 2024, Nautilus also issued the disclaimer of coverage to counsel for the Plaintiff.

33.    The disclaimer of coverage and correspondence provided to the Plaintiff stated, "[p]lease be advised that Nautilus has determined that there is no coverage for this lawsuit under the above-referenced excess liability policies issued by Nautilus to Kagyu Thubten Choling Inc. for the periods March 10, 2016, to March 10, 2017, March 10, 2017, to June 1, 2018, and June 1, 2018, to June 1, 2019. Nautilus therefore has disclaimed any obligation to defend or

9

indemnify the defendant in connection with the lawsuit under the Nautilus policies." *See Exhibit C*.

34. On June 23, 2025, in response to additional information provided to Nautilus by counsel for the Underlying Plaintiffs, Nautilus reiterated its disclaimer of coverage and stated "[t]he Nautilus Insurance policy is a follow form to that of EMIC. The EMIC contains an assault or battery exclusion in their policy which would also apply to the Nautilus policy."

35. On January 13, 2026, counsel for the Plaintiff notified Nautilus of the Affidavit of Confession of Judgment issued by PTC to Plaintiff and requested payment in the amount of Nautilus' policy limits available under the Nautilus Policy of $5,000,000.

36. On February 6, 2026, counsel for Nautilus notified Plaintiff's counsel that Nautilus disclaimed coverage for the Underlying Action and stated that Nautilus has no obligation to pay the confessed judgment against PTC.

37. The Nautilus disclaimer letter of January 9, 2024, failed to contain the high degree of specificity required under New York Insurance Law Section 3420(d)(2) to inform Plaintiff, as the injured party, of the grounds for the disclaimer and denial of coverage. *See Exhibit C.*

<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>

38. Plaintiff repeats each and every allegation contained above and below as if fully set forth herein.

39. The Eastern Mutual Policies were in full force and effect for the period from June 1, 2013, to June 1, 2017.

40. Each Eastern Mutual Policy provides coverage to PTC for bodily injury caused by an occurrence with limits including $1,000,000 per occurrence and $2,000,000 in the aggregate.

10

41.    Insurance Law § 3420(d)(2) provides that if an insurer shall disclaim liability or deny coverage for bodily injury arising out of an accident occurring within this state, it shall give written notice as soon as reasonably possible.

42.    Eastern Mutual did not provide the Plaintiff written notice of the disclaimer of coverage as soon as reasonably possible pursuant to Insurance Law § 3420(d)(2).

43.    As such, Eastern Mutual's disclaimer of coverage is ineffective.

44.    Therefore, Eastern Mutual is barred from relying on exclusions or conditions in the Eastern Mutual Policies to evade coverage.

45.    The Plaintiff, being entitled to enter and enforce the Judgment against PTC, is a judgment creditor as defined in CPLR 105(l) against Eastern Mutual's insured, in the amount of $28,690,541.63, for PTC's negligence in failing to prevent repeated sexual abuse.

46.    The Judgment was granted for the multiple occurrences of personal injuries the Plaintiff sustained, including multiple occurrences of personal injuries from June 2013 to June 2014, multiple occurrences of personal injury from June 2014 to June 2015, multiple occurrences of personal injury from June 2015 to June 2016, and multiple occurrences of personal injury from June 2016 to June 2017, all while residing at PTC, and all arising from PTC's negligence in failing to prevent each instance of sexual abuse, all as set forth in the Assessment of Damages. ***See Exhibit A.***

47.    The Judgment outlines that the Plaintiff sustained damages for her claims against PTC of negligence and negligent retention and supervision.

48.    Each instance of sexual abuse constitutes an occurrence under the Eastern Mutual Policies.

11

49.    The Judgment finds that the Plaintiff sustained multiple instances of bodily injuries from multiple occurrences under each of the four (4) applicable Eastern Mutual policy periods.

50.    As such, the $2,000,000 aggregate limit is applicable under all four of the Eastern Mutual Policies.

51.    As outlined in the Assessment of Damages attached to the Affidavit of Confession of Judgment (**Exhibit A**), the damages sustained by the Plaintiff are assessed as follows:

- June 2013 to June 2014          $2,500,000.00

- June 2014 to June 2015          $5,000,000.00

- June 2015 to June 2016          $7,500,000.00

- June 2016 to September 2016     $5,000,000.00

52.    The damages sustained by the Plaintiff during each applicable policy period of the four Eastern Mutual Policies exceeds $2,000,000.

53.    Therefore, the Plaintiff is entitled to the full aggregate limit under each applicable Eastern Mutual Policy, totaling $8,000,000.

54.    On January 13, 2026, the Plaintiff notified counsel for Eastern Mutual of the confessed Judgment.

55.    On February 26, 2026, the Plaintiff served PTC and Eastern Mutual with a notice of the Judgment, and the Judgment remains unsatisfied to date.

56.    Therefore, all conditions outlined in New York Insurance Law § 3420(a)(2) have been satisfied.

57.    Additionally, Eastern Mutual is barred from challenging the liability or damages determination in the Judgment. *See Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 356 (2004) (holding "… having chosen not to participate in the underlying lawsuit, the insurance carrier may only

litigate the validity of its disclaimer and cannot challenge the liability or damages determination underlying the judgment.")

58.    As such, the Plaintiff is entitled to a declaration that Eastern Mutual must indemnify PTC for the Judgment received in the Underlying Action.

59.    Further, Plaintiff is entitled to an award of damages against Eastern Mutual in the amount of Eastern Mutual's policy limits of $8,000,000.

## AS AND FOR A SECOND CAUSE OF ACTION

60.    Plaintiff repeats each and every allegation contained above and below as if fully set forth herein.

61.    The Nautilus Policy was in full force and effect from March 10, 2016, to March 10, 2017, and contains an aggregate policy limit of $5,000,000.

62.    Insurance Law § 3420(d)(2) provides that if an insurer shall disclaim liability or deny coverage for bodily injury arising out of an accident occurring within this state, it shall give written notice as soon as reasonably possible.

63.    An effective disclaimer must detail with "a high degree of specificity … the ground or grounds upon which the disclaimer is predicated." *Union Mut. Fire Ins. Co. v. 831 Quincy St., LLC*, 229 A.D.3d 479, 481 (2024).

64.    Nautilus did not articulate its ground for disclaimer with any degree of specificity.

65.    As such, Nautilus' disclaimer of coverage is defective, and Nautilus is prevented from relying on its disclaimer to evade coverage for the Underlying Action and the Judgment.

66.    The Nautilus Policies provide that Nautilus will pay on behalf of PTC provided that the "ultimate net loss" is excess of the "underlying insurance limit" because of injury or damage caused by a "loss event."

13

67.    A "loss event" is defined as the happening, situation, or circumstance that initiates the application of the "underlying insurance" as designated in the Schedule of "Underlying Insurance."

68.    The Eastern Mutual policy is applicable "Underlying Insurance."

69.    As outlined above, multiple occurrences initiated the application of the Eastern Mutual policy for the June 1, 2016, to June 1, 2017, policy period.

70.    Therefore, multiple "loss events" occurred during the Nautilus Policy period.

71.    As relevant to the Nautilus Policy, the Plaintiff's damages were assessed as follows:

- June 2015 to June 2016          $7,500,000.00

- June 2016 to September 2016     $5,000,000.00

72.    Therefore, the Eastern Mutual $2,000,000 aggregate limits are exhausted for the June 2015 to June 2016 policy period and June 2016 to June 2017 policy period.

73.    As such, the Nautilus Policy is implicated by the damages sustained by the Plaintiff in excess of the Eastern Mutual policies.

74.    Further, Plaintiff has sustained damages in excess of the $5,000,000 Nautilus Policy limit.

75.    On January 13, 2026, Plaintiff notified counsel for Nautilus of the Judgment.

76.    On February 26, 2026, the Plaintiff served Nautilus with a notice of the Judgment and the Judgment remains unsatisfied to date.

77.    Therefore, all conditions outlined in New York Insurance Law § 3420(a)(2) have been satisfied.

78.    As such, Plaintiff is entitled to declaration that Nautilus must indemnify PTC for the Judgment received in the Underlying Action.

14

79.     Additionally, Plaintiff is entitled to an award of damages in the amount of the Nautilus Policy Limit of $5,000,000.

### AS AND FOR A THIRD CAUSE OF ACTION

80.     Plaintiff repeats each and every allegation contained above and below as if fully set forth herein.

81.     PTC assigned, transferred, and conveyed to Plaintiff, to the fullest extent permitted by applicable law, all of PTC's rights, claims, and causes of action against the Insurers for indemnification for the state-law negligence claims asserted by Plaintiff in the Underlying Action.

82.     PTC, as an insured under the insurer's policies, had the right to seek indemnification for any judgment against it which would be covered and insured under the Eastern Mutual and Nautilus Policies, which rights have been assigned to Plaintiff.

83.     Accordingly, by virtue of that assignment, Plaintiff has the right, as assignee, to seek indemnification from the Defendants for the Judgment confessed.

**WHEREFORE,** Plaintiff, JANE DOE 1, respectfully requests judgment against Eastern Mutual and Nautilus as follows:

(1)     Declaring and Adjudging that EASTERN MUTUAL'S disclaimer of coverage, pursuant to policy exclusions, failed to comply with the statutory requirements of New York Insurance Law § 3420(d)(2);

(2)     Declaring and Adjudging that EASTERN MUTUAL must indemnify PTC for the Judgment against it in favor of PLAINTIFF;

(3)     Declaring and Adjudging that PLAINTIFF is entitled to an award of damages in the amount of the limits available under the Eastern Mutual Policies of $8,000,000;

(4)     Declaring and Adjudging that NAUTILUS' disclaimer of coverage failed to comply with the statutory requirements of New York Insurance Law § 3420;

(5)     Declaring and Adjudging that NAUTILUS must indemnify PTC for the Judgment in favor of PLAINTIFF;

(6)     Declaring and Adjudging that PLAINTIFF is entitled to an award of damages in the amount of the available Nautilus Policies' limits of $5,000,000;

(7)     Awarding PLAINTIFF her attorney's fees and costs for this Action; and

(8)     Granting PLAINTIFF such other and further relief as this Court may deem just, proper and equitable.


DATED:     Buffalo, New York
           April 15, 2026

McALLISTER OLIVARIUS


By: _Maura Abeln Smith_____
    John F.O. McAllister, Esq.
    Maura Abeln Smith, Esq.
    *Attorneys for Plaintiff,*
    *JANE DOE 1*
    641 Lexington Avenue, 13th Floor
    New York, New York 10022
    (212) 433-3456
    jmcallister@mcolaw.com
    msmith@mcolaw.com

           -and-

16

HURWITZ FINE P.C.

By:

Dan D. Kohane, Esq.
Lexi R. Horton, Esq.
*Attorneys for Plaintiff,*
*JANE DOE 1*
The Liberty Building
424 Main Street, Suite 1300
Buffalo, New York 14202
(716) 849-8900
ddk@hurwitzfine.com
lrh@hurwitzfine.com

17